## PEOPLE ex rel. McELEARNEY v. MONROE, Com'r.

(Supreme Court, Appellate Division, Second Department. June 23, 1905.)

1. CERTIORARI—EVIDENCE—SUFFICIENCY.

Where a determination reviewable on certiorari could not stand if it had been the verdict of a jury, it will be set aside as against the weight of the evidence, under Code Civ. Proc. § 2140, providing that on certiorari "the questions involving the merits to be determined by the court on the hearing are the following only [subd. 5]: whether there was on all the evidence such a preponderance of proof against the existence of any facts necessary to be proved that the verdict of a jury affirming the existence

thereof rendered in an action in the Supreme Court, triable by a jury, would be set aside by that court as against the weight of the evidence."

2. MUNICIPAL CORPORATIONS—EMPLOYÉS—BREACH OF DUTY—DISMISSAL.

On certiorari to review the determination of the commissioner of water supply, gas, and electricity of the city of New York in dismissing relator for neglect of duty, in omitting to suspend a carpenter under his supervision for intoxication, evidence examined, and *held* insufficient to show a violation of duty in omitting to suspend the carpenter on the date of the carpenter's alleged intoxication.

Certiorari by the people, on the relation of Owen McElearney, against Robert Grier Monroe, as commissioner of the department of water supply, gas and electricity of the city of New York, to review a determination of the commissioner dismissing relator. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and MILLER, JJ.

Joseph Fitch, for plaintiff.

James D. Bell (Edward H. Wilson, on the brief), for defendant.

PER CURIAM. The relator, who was entitled to a hearing under section 21 of chapter 3, p. 165, of the General Laws, was heard and dismissed from the department of water supply, gas, and electricity, for neglect of duty, in "not keeping proper records of the transactions at the station under his charge, and in not suspending Clarke, the carpenter, on Saturday, April 18, 1903, when he saw Clarke at the station under influence of liquor." I shall first consider the latter alleged misconduct. I think that the determination cannot stand, because, if it had been the verdict of a jury, it should have been set aside as against the weight of evidence. Subdivision 5, § 2140, Code Civ. Proc. The relator was entitled to a hearing upon due notice, upon stated charges, under the section of the General Laws heretofore cited. There is a variance between the charge and the determination, which I shall notice further on. The evidence shows that Clarke was intoxicated on April 18th. But it does not show when he became intoxicated, or that his condition was known to the relator until Clarke had quit his work for the day, and had started on his way home. Drew, who made the charges, and was called as a witness against the relator, testifies that Clarke, when first seen by him, at 8:30 a. m., was apparently sober and fit to work. The relator testifies that Clarke seemed sober when seen by him at 8 a. m., and that Clarke worked until 12 m., when he left his work and went to the fireroom to take luncheon. Drew discovered Clarke's intoxication as Clarke was about to leave the station. The relator testifies that he noticed that Clarke acted as if under the influence of liquor as he passed the relator by, and said he was going to Flushing. The attempt to prove that Clarke's work day continued beyond 12 m. failed. Thus it appears that Clarke came to his work apparently sober, and did his work, and that neither Drew nor the relator learned that he was intoxicated until after he had quit his work for the day, had his luncheon, and was leaving the station. The determination of the commissioner is

that the relator neglected his duty in not suspending Clarke on
Saturday, April 18th. The charge, as stated against the relator in
the said letter inclosed, reads:

"Following your instructions of the 18th ult., regarding Thomas Clark,
carpenter, whom I reported to you, as having found him under the influence
of liquor while on duty at Station No. 1, L. I. City, on Saturday afternoon,
I will say that when I called at the station this morning [i. e. Monday, April
20th], I found that Engineman in Charge, Owen McElearney had allowed
him to go to work. I immediately suspended him, also Engineman in Charge,
Owen McElearney, for neglect of duty in failing to suspend him, as is re-
quired according to the rules and regulations of the department."

Mr. McKay, to whom this letter was addressed by Drew, when
called to sustain the charges, testifies as to his instruction to Drew:

"I told him to go to pumping station No. 1 the following Monday, and see
if Mr. Clarke was at work, and, if Mr. Clarke was at work, to suspend Mr.
Clarke, and also Mr. McElearney."

Thus it appears that the charge was not based upon the neglect of
the relator to suspend Clarke on the spot when he discovered
Clarke's condition on Saturday afternoon, because the instructions
of the assistant engineer were to suspend the relator if Clarke was
at work on Monday morning, and it is quite evident that Drew acted
only when he ascertained that Clarke was at work on Monday.
But the commissioner determined that the relator neglected his
duty when he omitted to discharge Clarke on that Saturday. I
think that, under the circumstances, the weight of evidence does
not establish a violation of duty in the omission to suspend Clarke
on April 18th. In the first place, the relator did not know of
Clarke's condition until he had left his work, taken his luncheon, and
was leaving the station for the day. For aught that appears, and
presumably, Clarke became intoxicated after he had ended his
work. In the second place, Drew was the superior officer of the
relator, then present, and directly cognizant of Clarke's condition.
Drew was empowered to suspend Clarke. He says that it was the
relator's duty, but he admits that it was his right, and, when asked
whether it was not his duty, says: "I believe that I have a little
right, in a matter of that kind, to talk to my superiors first." Drew,
then present with supervisory power and with the right to suspend,
did nothing. The relator might well have hesitated in the pres-
ence of his superior, in the same spirit which caused Drew to remain
inactive. Hesitation on the part of the relator was sufficient to
suffer Clarke to pass out and away. If the relator had suspended
Clarke at that time or on Monday morning, before he could re-
sume work, it would seem that the regulation would have been sub-
stantially met. Certainly this is the practical construction which
both Drew and McKay gave to the regulation, for the instruction
from McKay to Drew was to suspend the relator if he allowed
Clarke to go to work on Monday morning; and, indeed, as I have
shown, the charge is that the relator neglected his duty because he
had not suspended Clarke, so as to prevent his going to work on
the next working day. It does not appear that Drew even chided
the relator for any misconduct on Saturday. The relator testifies

that on the next day, Sunday, he wrote to the chief engineer a letter, which he produces—that Clarke was under the influence of liquor on Saturday, and left the station before he had a chance to suspend him. He testifies that he inclosed the letter with his daily report, and had it ready for transmission on Monday, when he was suspended by Drew. He then took out the letter to seek Mr. McKay, but failed to find him. He afterwards found the chief engineer, and spoke to him about his own suspension, and showed this letter to him, but the chief engineer then returned the letter to him. The chief engineer remembers the interview, but does not "recollect" anything about the letter. McKay does recall that within a day or two after suspension, when the relator spoke to him on the subject, he had a letter which he told McKay he had prepared and ready for transmission when he was suspended. However this may be, the relator testifies that, when Clarke came to work on Monday, he then informed Clarke that he was to be suspended— that he need not go to work—but that Clarke said he would stay until McKay or Drew came. He is not contradicted. Clarke was reinstated within three days on recommendation of McKay. It did not appear that he was inaccessible, and no reason is given for the omission to call him. McKay testifies that he once thought a "good deal of Mr. McElearney, and thought him just the man for that station," but after relator had told him that one of the other subordinates was "out for graft," which he did not believe, because of that subordinate's record, and his own knowledge of the man, "from that time on I did not have much liking for Mr. McElearney."

The other neglect of duty, as testified to, is:

"He has got simply dates on there, without the hours, in this last entry of machinists' time—they are making repairs to the pumps. Simply has the dates here, and don't signify whether six or seven or eight hours they worked, or how many."

The charge is:

"I have also found that he has been neglectful in failing to keep the working time of the men employed at his station."

The rule and regulation cited in the notice of hearing is:

"The chief enginemen shall be responsible for the condition of the pumping stations under their charge. * * * They shall also promptly suspend any employee under their charge for carelessness, unnecessary absence, insubordination, intoxication or any other sufficient cause, promptly preferring charges in a written report to the chief engineer."

When challenged to point out the pertinent clause, the assistant engineer read as follows:

"The enginemen shall be responsible for the condition of the pumping stations under their charge. They shall keep a record of the daily operations of their plants in books prepared by the assistant engineer," etc.

He testified that he relied upon that clause, as well as a certain letter of instructions, "distinctly stating they shall keep the time of the men employed in their stations—the employés and men at

work at the station or [sic] order and contracts." The letter referred to is as follows:

"To the Engineman in Charge: You are hereby directed to at once take an accurate account of stock on hand, including duplicate parts to machinery, oil, waste, tools and supplies of all kinds, and to transmit a copy of same to me immediately' thereafter, with recommendations as to what, if any, repairs or changes to existing storage accommodations are needed, or what, if any, new construction is required to properly safeguard said supplies. You will also furnish me a statement of duplicate parts, such as pump valves, springs, spindles, etc., steam valve stems or any other parts that might be needed for immediate repairs that could be done by the force in the station, giving all the dimensions necessary to intelligently order same. Also you will keep an accurate and neat record of date of starting, rainy days and the number of days consumed, and the kind and quantity of material or materials used on any new construction or on any and all repair work to machinery or premises that may be going on, and you will see to it that the specifications for same, which will be furnished you if there be any, or directions given you from time to time by the undersigned, are strictly adhered to. You will also furnish me a list of names of the men in your station, stating what duties they are now performing."

Mr. McKay admitted that the books had not been supplied or even prepared.. The relator testifies that he did keep the hours for a time, but afterward abandoned the practice, as he thought it unnecessary, as the men were at days' work, and he was hard pressed by his other duties, but that he never received instructions to keep the number of hours. I do not think that it was sufficiently proven that there was any rule or regulation or ordinance of the department which required the relator to keep the hours. There is no proof that he was neglectful in any other material respect.

The determination must be reversed, with costs.

Determination annulled, with costs, and relator restored to his position.